**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| EQUAL RIGHTS CENTER,<br><br>Plaintiff,<br><br>v.<br><br>ERP OPERATING LIMITED PARTNERSHIP, *et al.*,<br><br>Defendants. | ) | Civil Action No. 25-2141 (ABJ) |

## ORDER

Plaintiff has filed a motion to remand this removed action to the Superior Court of the District of Columbia and to award attorneys' fees. Pl.'s Mot. For Remand to D.C. Super. Ct. [Dkt. # 10] ("Pl's Mot. to Remand"). Because the Court concludes that it lacks jurisdiction to hear the case, it will grant the motion and remand the matter, but it will deny the motion for attorneys' fees.

## BACKGROUND

On June 3, 2025, plaintiff, Equal Rights Center, brought an action in the Superior Court of the District of Columbia against defendants AvalonBay Communities, Inc. and its subsidiary, Archstone North Capitol Hill 2 LP for violations of the D.C. Consumer Protections Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.* After removal to this Court and during the pendency of the litigation, AvalonBay and Archstone merged with ERP Operating Limited Partnership ("ERP OP"), and ERP OP is the successor to all the assets and liabilities of AvalonBay. *See* Consent Mot. to Substitute Parties [Dkt. # 19] at 1–2. After the merger was completed, Vivmark

Residential Management LLC ("Vivmark") was appointed as the new property manager. *Id.* at 2. Accordingly, this Court granted a consent motion to substitute ERP OP and Vivmark (collectively, "defendants") pursuant to Fed. R. Civ. P. 25(c). *See* Minute Order (Aug. 31, 2026).

Plaintiff Equal Rights Center is a Washington, D.C. non-profit civil rights membership corporation seeking to eliminate discrimination in housing, employment, and public accommodations in the Washington area. Compl. [Dkt. # 1-2] ¶ 10. Defendant ERP OP is an Illinois limited partnership, and defendant Vivmark is a Maryland real estate investment trust. Decl. of Myomi T. Coad, Ex. 1 to Consent Mot. to Substitute Parties [Dkt. # 19-1] ¶¶ 2–3.

According to the complaint, defendants own and manage AVA NoMa, a 438-unit apartment building located at 55 M Street NE, Washington, D.C. 20002, which offers studio, one-, two-, and three-bedroom units. Compl. ¶¶ 3, 36. Plaintiff asserts that defendants are falsely advertising the number of bedrooms in 192 of the units; it complains that one or more of the advertised bedrooms in the units do not meet federal or District requirements for a "bedroom" because they do not have a window. *See* Compl. ¶¶ 4, 38, 42, 46. As a result of the misrepresentation, plaintiff claims the D.C. Housing Authority ("DCHA"), which administers the Housing Choice Voucher Program ("HCVP"), would be likely to deny applications from housing voucher recipients seeking to live at AVA NoMa because the units would fail inspection. Compl. ¶¶ 41, 45, 48.

Plaintiff brought this action under the D.C. Consumer Protection Procedures Act "on behalf of prospective tenants in [Washington, D.C.], specifically prospective tenants of AVA NoMA who are participants in the Housing Choice Voucher Program." Compl. ¶ 34. Under the CPPA, a public interest organization can bring a suit "on behalf of the interests of a consumer or class of consumers" if the consumers could bring an action for relief on their own. D.C. Code § 28-

3905(k)(1)(D)(i). In addition to declaratory relief and attorneys' fees, plaintiff seeks an injunction requiring defendants to correct their advertising to reflect the actual number of legal bedrooms available for rent in all units. *See* Compl. at 21.

Plaintiff originally filed its complaint in the Superior Court for the District of Columbia. *See* Compl. Defendants removed the case pursuant to 28 U.S.C. § 1332(a). *See* Notice of Removal [Dkt. # 1-1] at 1–2. On July 25, 2025, defendants filed a motion to dismiss, which is fully briefed.[1] On August 1, 2025, plaintiff filed the instant motion to remand on jurisdictional grounds, asserting that the amount-in-controversy does not exceed $75,000 as required by 28 U.S.C. § 1332(a). Pl.'s Mot. to Remand at 2–3. That issue is also fully briefed. *See* Defs.' Opp. to Mot. to Remand [Dkt. # 14]; Pl.'s Reply Mem. in Supp. of Mot. to Remand [Dkt. # 16].

## STANDARD OF REVIEW

Removal of cases to federal court is controlled by 28 U.S.C. § 1441(b), which requires that a federal court must have original jurisdiction over an action in order for it to be removed from state court. *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 34 (2002). But, as federal courts are of limited jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party opposing a motion to remand bears the burden of establishing that jurisdiction exists. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *Nat'l Consumers League v. Flowers Bakeries, LLC.*, 36 F. Supp. 3d 26, 30 (D.D.C. 2014). To meet that burden, the district court must find by a preponderance of the evidence that the amount-in-controversy exceeds the jurisdictional threshold. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88

1 Defs.' Mot. to Dismiss [Dkt. # 8]; Pl.'s Mem. in Opp. to Mot. to Dismiss [Dkt. #11]; Defs.' Supp. to Mot. to Dismiss [Dkt. # 13]; Pl.'s Response to Defs.' Supp. to Mot. to Dismiss [Dkt. # 18].

(2014). And, as the D.C. Circuit has explained, "[w]hen it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case." *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002).

## ANALYSIS

Defendants assert that removal was proper because plaintiff's claim falls within the scope of the federal courts' diversity jurisdiction established in 28 U.S.C. § 1332. Defs.' Opp. to Mot. to Remand at 2–3. Neither party contests that complete diversity is satisfied; the parties only disagree over whether the amount-in-controversy requirement has been met. Defs.' Opp. to Mot. to Remand at 2–4; Pl.'s Mot. to Remand at 3.

### I. The Court cannot retain jurisdiction because the amount-in-controversy requirement is not met.

A federal court has diversity jurisdiction when there is complete diversity of citizenship among the parties, and the "amount in controversy" is greater than $75,000. *See* 28 U.S.C. § 1332(a)(1). To satisfy its burden of establishing jurisdiction, defendants contend that the cost of complying with injunctive relief, when added to attorneys' fees, clears the $75,000 threshold. *See* Defs.' Opp. to Mot. to Remand at 9–15.

#### A. The cost of complying with the requested injunction

Where, as here, a plaintiff seeks injunctive relief, "the test for determining the amount-in-controversy is the pecuniary result to either party which the judgment would directly produce." *Tatum v. Laird*, 444 F.2d 947, 951, n.6 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972); *see Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) ("[A] court may look either to the value of the right that plaintiff seeks to enforce or to protect or to the cost to the defendants to remedy the alleged denial."). Defendants offer two theories to establish the cost of compliance: (1) the aggregated rent differential between the alleged advertised monthly rent and the alleged

reasonable rent and (2) the construction costs required to bring the units at issue into compliance with federal and District requirements. Defs.' Opp. to Mot. to Remand at 10–12, Ex. D, Declaration of Timothy Joseph [Dkt. # 14-4] ("Joseph Decl.") ¶¶ 4–8.

### 1. Rent differential

Defendants' rent differential theory calculates what the loss in rental income would be if defendants were ordered to "set[] a reasonable rent." Defs.' Mot. at 10. Defendants estimate that the monthly differential, scaled across a typical twelve-month lease term, would produce over $2 million in losses per year. *Id.* at 11. Setting aside any concerns about the speculative nature of the calculation, defendants' rent differential theory fails because it falls outside of the scope of the requested injunction. In its complaint, plaintiff requests "a permanent injunction requiring Defendants to immediately correct their advertising to reflect the actual number of legal bedrooms available for rent in all units." Compl. at 21. Contrary to defendants' assertions, *see* Defs.' Opp. to Mot. to Remand at 10, the complaint does not seek relief requiring defendants to charge a "reasonable" rent for the units at issue.[2] In fact, it is unclear to the Court whether lowering the rent would address the core issue of defendants' alleged misrepresentation of the number of bedrooms available in the units at all. An injunction, if granted, would therefore not "directly produce" the pecuniary results that defendants assert under the rent differential theory and would not be a proper measure of the amount in controversy. *Tatum*, 444 F.2d at 951.

---

2 Defendants pull the "alleged reasonable rent" figures from paragraphs in the complaint in which plaintiffs contend that the DCHA would likely find that the listed rent for a unit at issue would not be "reasonable" compared to the rent for units with the same number of legal bedrooms. *See* Compl. ¶¶ 41, 45, 48, 50. The plaintiffs use the figures to demonstrate that the units at issue would fail DCHA inspection, but they play no role in the requested injunction.

**2. Construction costs**

Defendants also posit that their construction costs could satisfy the amount-in-controversy requirement. Under this theory, they estimate that it would cost $128,320 to make the modifications necessary to bring the units at issue into compliance with federal and District standards in order to correct their advertising. Defs.' Opp. to Mot. to Remand at 11–12; Joseph Decl. ¶¶ 4–8. As with the lost rent, it is not clear that this is a necessary cost of complying with the proposed injunction relating to false advertisements. However, even if the Court assumes that renovating the units would be a means of complying with the proposed order, and that the construction costs are an available measure to satisfy the amount-in-controversy requirement, it would not be an appropriate measure to apply in this particular case because doing so would violate what is referred to the "non-aggregation principle."

The non-aggregation principle provides that "separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). Although the D.C. Circuit has not addressed on the application of the principle in these circumstances, all of the courts in this district that have considered the matter have held that defendants seeking to remove CPPA actions brought on behalf of D.C. consumers under D.C. Code § 28-3905(k)(1) cannot rely on the total cost of compliance to establish the amount-in-controversy requirement.[3] This Court finds those opinions to be

3 *See, e.g.*, *Breathe DC v. JUUL Labs, Inc.*, No. CV 20-619, 2023 WL 4531767, at *4 (D.D.C. July 13, 2023); *Earth Island Inst. v. BlueTriton Brands*, 583 F. Supp. 3d 105, 110 (D.D.C. 2022); *Int'l Lab. Rts. F. v. Bumble Bee Foods, LLC*, No. 22-CV-01220, 2022 WL 16994407, at *2 (D.D.C. Nov. 15, 2022); *Pesticides v. Exxon Mobil Corp.*, No. 20-1815, 2021 WL 1092167, at *2 (D.D.C. Mar. 22, 2021); *Toxin Free USA v. J.M. Smucker Co.*, 507 F. Supp. 3d 40, 45–46 (D.D.C. 2020); *Hackman v. One Brands, LLC*, No. 18-2101, 2019 WL 1440202, at *5 (D.D.C. Apr. 1, 2019); *Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344, 350 (D.D.C. 2018); *Inst. for Truth in Mktg. v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 91 (D.D.C. 2018); *Animal Legal Def. Fund v. Hormel Foods Corp.,* 249 F. Supp. 3d 53, 59-60 (D.D.C. 2017);

persuasive. Applying that reasoning, it concludes that defendants chose to comply with an injunction with construction modifications, that would resolve the separate and distinct claims of individual HCVP participants, and therefore, the proper cost of the injunction for amount-in-controversy purposes must be divided *pro rata* among the District of Columbia consumers represented in the claim.

Here, plaintiff brought its case "on behalf of prospective tenants in [Washington, D.C.], specifically prospective tenants of AVA NoMA who are participants in the Housing Choice Voucher Program." Compl. ¶ 34. Defendants contend that the non-aggregation principle does not apply because twenty housing voucher participants live or have lived in one of the AVA NoMa units at issue in this case, and therefore "no individuals [] fall into the category [plaintiff] purports to represent." Defs.' Opp. to Mot. to Remand at 5. Defendants further argue that plaintiff offers no evidentiary support for any of the allegations about the number of individuals it purports to represent. *Id.* These contentions do not weaken plaintiff's motion, though.

First, it is defendants' burden, not plaintiff's, to establish that the amount-in-controversy requirement is met, and that burden includes establishing the number of consumers represented by plaintiff's claim. *Mulcahey*, 29 F.3d at 151; *see, e.g.*, *Hardy-Gerena v. OP2 Labs, LLC*, No. 25-CV-3510, 2026 WL 1506549, at *4 (D.D.C. May 29, 2026) ("[Defendant] does not identify the number of . . . consumers in the District. Nor does it provide data that would allow the Court to *estimate* the number of consumers.").

---

*Breathe DC v. Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 163, 170–71 (D.D.C. 2017); *Organic Consumers Ass'n v. Handsome Brook Farm Grp. 2, LLC*, 222 F. Supp. 3d 74, 78 (D.D.C. 2016); *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 6 (D.D.C. 2015); *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 103–05 (D.D.C. 2008).

Second, while the Court acknowledges that there is some ambiguity about whether the class of consumers represented is meant to include all 13,000 HCVP participants, *see* Pl.'s Mot. to Remand at 4–5, or a subset comprised of those who may be prospective tenants of AVA NoMa specifically, neither interpretation supports an exercise of federal jurisdiction. *See* Compl. ¶ 34. The broader definition of the class of consumers represented would certainly doom any attempt at exercising jurisdiction, and courts in this district have accepted similar class definitions in the false advertising context. *See, e.g.*, *JUUL Labs*, 2023 WL 4531767, at *5 (applying a class comprised of "members of the general public of Washington D.C." in a case involving deceptive nicotine marketing practices); *see also Johnson-Brown v. 2200 M. St. LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003) (concluding that when the need to remand is not self-evident, the court "must resolve any ambiguities concerning the propriety of removal in favor of remand.").

Moreover, even the narrower potential definition of the class of consumers represented – prospective tenants of AVA NoMA who are participants in the Housing Choice Voucher Program – brings the claim below the jurisdictional threshold. Defendants assert that the existence of current and former residents participating in the voucher program at AVA NoMA supports a finding that such a class of consumers would have no members. Defs.' Opp. to Mot. to Remand at 5. But, it does the opposite. *See id.* Ex. A, Declaration of Rose Boehm [Dkt. 14-1] ("Boehm Decl.") ¶ 4 ("AVA NoMa welcomes – and has always welcomed – voucher holders . . . to apply for and lease AVA NoMa units"). And aside from stating that AVA NoMa has had "at least fifty-six (56) voucher holders as residents" in all of its units since 2018, defendants provide no other evidence that would enable the Court to estimate the number of prospective tenants at AVA NoMA who participate in the HCVP. Defs.' Opp. to Mot. to Remand at 5. Since all voucher program participants are eligible to apply, the number of prospective residents would be larger than the

number of actual residents. And with the cost of compliance as low as $128,320, even just two prospective tenants participating in the HCVP would bring defendants below the $75,000 threshold for any individual plaintiff. Regardless of the proper denominator, then, the application of the non-aggregation principle requires a finding that defendants have not carried their burden of demonstrating that the cost of complying with the injunction divided *pro rata* among the class of consumers would exceed the jurisdictional threshold.

**B. Attorney's Fees**

Defendants further contend that the claim for attorneys' fees, when added to costs of compliance, "clearly exceeds" the $75,000 amount-in-controversy requirement. Defs.' Opp. to Mot. to Remand at 15.

In the absence of controlling authority from the D.C. Circuit, courts in this district consistently apply the non-aggregation principle to the measure of attorneys' fees as they do the cost of compliance when calculating the amount-in-controversy.[4] Here, though, defendants have not even calculated a total fee amount for the Court to consider. *See* Defs.' Opp. to Mot. to Remand at 13–15. Instead, they provide a list of fees awards in previous CPPA cases as examples, and list hourly billing rates from the Laffey Matrix. *Id.* at 13–14. More importantly, defendants concede that attorneys' fees are not sufficient to meet the $75,000 threshold alone, even without the application of the non-aggregation principle. *See id.* at 15 ("[Defendants are] not contending – and [have] never asserted – that [plaintiff] has already incurred over $75,000 in reasonable

4 *See, e.g.*, *Hardy-Gerena*, 2026 WL 1506549, at *4 (D.D.C. May 29, 2026); *Nat'l Consumers League v. Starbucks Corp.*, No. 24-cv-421, 2025 WL 315141, at *3 (D.D.C. Jan. 28, 2025); *Food & Water Watch v. Smithfield Foods, Inc.*, No. 21-cv-2065, 2021 WL 8821537, at *3 (D.D.C. Dec. 6, 2021); *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013); *Nat'l Consumers League v. General Mills, Inc.*, 680 F. Supp. 2d 132, 141 (D.D.C. 2010); *Breakman*, 545 F. Supp. 2d at 107.

attorneys' fees to date."). Thus, defendants once again face a denominator problem: even if combined with the construction costs outlined above, a class of just three consumers would necessarily bring defendants below the jurisdictional threshold. And because defendants have not carried their burden of demonstrating that the class is smaller than three individuals, or what any class member's share of attorneys' fees might be, this Court cannot find by the preponderance of the evidence that the amount-in-controversy requirement has been met.[5]

For all of those reasons, the Court concludes that it does not have subject matter jurisdiction over this matter and must remand it to Superior Court.

## II. Plaintiffs' request for attorney's fees is denied because defendants' removal was not unreasonable.

Finally, plaintiff requests an award of attorneys' fees associated with remand. Pl.'s Mot. to Remand at 8. The Court concludes in its discretion that such an award would not be appropriate.

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). As the Supreme Court explained, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Plaintiff argues that the consistent application of the non-aggregation principle to CPPA claims in this district demonstrates that defendants' removal was "objectively unreasonable." Pl.'s

---

5 Beyond the hurdle presented by the non-aggregation principle, defendants arguments related to attorneys' fees are likely too speculative to factor into the amount-in-controversy calculation. This Court agrees with other courts in this district that have rejected similar arguments by CPPA defendants seeking to satisfy amount-in-controversy requirements. *See, e.g.*, *Hardy-Gerena*, 2026 WL 1506549, at *5 (holding that the application of the Laffey Matrix and previous CPPA fee awards are "too speculative" to support an assertion of jurisdiction); *Int'l Lab. Rts. F.*, 2022 WL 16994407, at *2 ("Simply listing previous fee awards and billing rates from 2017 for the plaintiff's counsel is not enough to establish the amount-in-controversy.").

Mot. to Remand at 8. But given the absence of binding circuit authority on the need to apply the non-aggregation principle, the Court is reluctant to deem the removal objectively unreasonable, and other courts in this district have denied attorneys' fees for that reason. *See Toxin Free USA*, 507 F. Supp. 3d at 47; *Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d at 172. Also, plaintiff's lack of clarity when characterizing its own proposed class complicated the analysis. Therefore, an award of fees to plaintiff is not warranted.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to remand the case and award attorneys' fees is **GRANTED IN PART** and **DENIED IN PART**. The Clerk of Court is directed to remand this case to the Superior Court of the District of Columbia, and the request for attorneys' fees is **DENIED**.

AMY BERMAN JACKSON
United States District Judge

DATE: September 8, 2026